UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JACQUELINE ANN MUHS, <br><br> Defendant. | 4:19-CR-40023-02-KES <br><br><br> ORDER DENYING MOTION <br> FOR COMPASSIONATE RELEASE |

Defendant, Jacqueline Ann Muhs, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 338. Plaintiff, the United States of America, opposes the motion. Docket 355. For the following reasons, the court denies defendant's motion for compassionate release.

**BACKGROUND**

On February 24, 2020, Muhs pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 180, 185. On May 18, 2020, the court sentenced Muhs to 120 months in custody and five years of supervised release. Docket 243; Docket 244 at 2-3.

Muhs is incarcerated at Federal Correctional Institution Pekin (FCI Pekin), a medium security facility with an adjacent minimum-security camp, in Pekin, Illinois. Docket 338 at 1; Docket 339 at 2. The total population at FCI Pekin is currently 1,161 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/pek/ (last visited Feb. 11, 2021). As of February 11, 2021, there are currently five active COVID-19 cases among FCI Pekin's inmates and eight among staff, no deaths from COVID-19, and 792 inmates and 71 staff have recovered from COVID-19. *See BOP: COVID-19*

*Update*, https://www.bop.gov/coronavirus/ (last visited Feb. 11, 2021).

Muhs is 45 years old. Docket 346 at 92. As of September 8, 2020, Muhs weighed 237 pounds and is 65 inches tall. *Id.* at 13. Based on her weight and height, her body mass index (BMI) is 39.4, which qualifies her as obese. *See Adult BMI Calculator,* Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_ calculator/bmi_calculator.html (last visited Feb. 5, 2021). Muhs alleges she suffers from obesity, chronic viral hepatitis C, history of MRSA (methicillin-resistant staphylococcus aureau), history of smoking, and mental health problems including major depressive disorder. Docket 353 at 1; Docket 339 at 1. She further asserts there are no support groups for mental health problems at FCI Pekin and claims, "it is nearly impossible to see [a] mental health doctor to talk about medication adjustments[.]" Docket 339 at 1-2.

On October 19, 2020 Muhs completed an Inmate Request to Staff form, requesting she be considered for compassionate release due to COVID-19. Docket 346 at 89. On November 16, 2020, the warden denied Muhs's request. *Id.* at 96. On December 7, 2020, Muhs filed a pro se motion with the court for relief under the First Step Act. Docket 338. Muhs's counsel subsequently filed a supplement to her pro se motion. Docket 353.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C.

§ 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Muhs argues that the global COVID-19 crisis along with her health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 338 at 1; Docket 339 at 1-2; Docket 353 at 1, 8-15.

## I.    Administrative Exhaustion

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Muhs submitted an administrative request for compassionate release due to COVID-19. Docket 346 at 89. The warden denied the request on November 16, 2020. *Id.* at 96. Having presented her request to the warden and being denied, and hearing no objection from the United States, the court will presume Muhs has satisfied the administrative exhaustion requirement and review the matter on the merits.[1]

## II.    Extraordinary and Compelling Reasons

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four scenarios. USSG § 1B1.13, comment. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other

---

[1] The warden's response states that if Muhs is not satisfied with the decision, she may commence an appeal through the administrative remedy process within 20 days of the response. Doc. No. 346 at 96. There is no indication that Muhs appealed the decision administratively.

than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, comment. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, a number of district courts, including this one, have questioned whether the previous policy statement still applies. *See United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-4009-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). A fellow court in this district has held that the "court retains its independent authority to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring[.]" *United States v. Magnuson,* 5:15-CR-50059-JLV, 2020 WL 7318109, at *5 (D.S.D. Dec. 11, 2020) (internal quotations omitted). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd,* 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

It is clear Congress desired to increase the use of compassionate release by allowing defendants to directly petition the sentencing court after exhausting administrative remedies. *See* 132 Stat. at 5239. The statute instructs that the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame,* 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Muhs contends that the ongoing COVID-19 pandemic in combination with her health conditions satisfy the "extraordinary and compelling reasons"

standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 353 at 13-15; Docket 338 at 4. Muhs contends that her circumstances warrant relief under the medical conditions category, USSG § 1B1.13 Application Note 1(A), and the catch-all provision, USSG § 1B1.13 Application Note 1(D). Docket 353 at 8-15.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Muhs has failed to show that her reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.    Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down syndrome, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 3, 2021). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including, moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, overweight, type 1 diabetes, and several others. *Id.*

The court has reviewed the medical records submitted in this case.

Muhs's current medical conditions include chronic viral hepatitis C, major depressive disorder, and tendinosis of left rotator cuff tendon. Doc 346 at 1, 12, 75. Based on Muhs's height and weight, her BMI is 39.4, which is obese. *See id.* at 13. Muhs's obesity is a condition that increases the risk of severe illness from COVID-19. Muhs's other medical conditions—chronic viral hepatitis C, major depressive disorder, and shoulder injury—are not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19.

This court has required a more particularized showing of risk, and has concluded obesity alone or in combination with other conditions that *might* increase the risk is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19 pandemic. *See, e.g., United States v. Wright*, 4:16-CR-40083-04 KES, Docket 545 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5 or 33.3, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *Adame*, 2020 WL 7212096, at *4; (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19); *United States v. McAbee*, No. 4:14-CR-40027-01-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons). Muhs's conditions are similar to those where the court has denied release.[2]

Muhs argues that hepatitis C makes her more prone to liver damage and disease, which increases her risk of severe illness from COVID-19. Docket 353

---

[2] Nor does the court find Muhs's history of smoking a particularly extraordinary or compelling factor in its evaluation.

at 9-10. "Hepatitis C is a viral infection that causes liver inflammation, sometimes leading to serious liver damage" according to Mayo Clinic. *See* Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hepatitis-c/ symptoms-causes/syc-20354278 (last visited Feb. 11, 2021).  Chronic hepatitis C is usually curable with oral medications taken every day for two to six months. *Id.* The records do not indicate Muhs suffers from liver damage; at most she has had some blood work that revealed elevated liver enzymes. Docket 346 at 63; Docket 353 at 9.

The CDC has specifically addressed hepatitis B and hepatitis C within the context of liver disease and the risks of COVID-19. *See What to Know About Liver Disease and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/liver-disease.html (last visited Feb. 11, 2021). The CDC indicates "people with liver disease (such as hepatitis B or hepatitis C) **might be at increased risk for serious illness from the virus that causes COIVD-19.**" *Id.* (emphasis in original). The CDC states "[p]eople might be more likely to have severe disease if their medical conditions are not well controlled."  *Id.*  The CDC recommends "[p]eople who are on treatment for hepatitis B or C should continue their treatment unless otherwise directed by their healthcare provider."  *Id.*

The records do not indicate that Muhs' hepatitis C is not well controlled. Overall, her medical records reflect minimal clinic visits, which leads the court to believe that Muhs is generally healthy. Docket 346 at 2-3, 12-15, 18-22. Additionally, her current medical conditions appear to be stable. *Id.* at 36, 54. She is prescribed citalopram for major depressive disorder, meloxicam (non-

steroid anti-inflammatory) for shoulder pain, and doxycycline hyclate for acne. *Id.* at 36.  Muhs has not identified how being obese or having chronic hepatitis C prevents her from providing self-care in a correctional facility setting or how that condition amounts to extraordinary and compelling circumstances.

Finally, Muhs argues her prior course of COVID-19 should be considered because she is still at risk of complications from the virus. Docket 353 at 15. Muhs tested positive for COVID-19 after routine screening on November 3, 2020. Docket 346 at 10, 51. She was placed in quarantine and her vital signs were monitored. *Id.* at 1, 4, 38. Her symptoms included cough, shortness of breath, nasal congestion, runny nose, sore throat, fatigue, aches and pains, headache, pain in chest and loss of taste and/or sense of smell. *Id.* at 7. She had no fever. *Id.* at 38. On November 17, 2020, Muhs was released from quarantine and stated her symptoms were improving at that time. *Id.* at 4.

Because Muhs has already had COVID-19, there is little reason for her to be released early now. Much is still unknown about COVID-19. Nonetheless, according to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/ your-health/reinfection.html (updated Oct. 27, 2020) (last visited Feb. 11, 2021).

There is a growing consensus that "people who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to have some degree of protection against being reinfected with the virus." *See SARS-CoV-2 Antibodies Can Protect from Reinfection, NCI Study Suggests*, Nat'l Cancer Inst., https://www.cancer.gov/news-events/cancer-current-blog/

2020/coronavirus-antibodies-protect-against-future-infection (dated Dec. 21, 2020) (last visited Feb. 11, 2021); *see also Director's Blog—COVID-19 Reinfection: Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months*, Nat'l Inst. Health, https://directorsblog.nih.gov/tag/covid-19-reinfection/#.~:text=New findings from a study, the study was conducted. (dated Dec. 8, 2020) (last visited Feb. 11, 2021) (discussing study of England healthcare workers suggesting that "acquired immunity from an initial COVID-19 infection offers protection against reinfection for six months or maybe longer.").

The court believes Muhs's medical conditions are appropriately managed at FCI Pekin, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that FCI Pekin had a COVID-19 outbreak does not negate such conclusions. The statistical information for FCI Pekin demonstrates a widespread COVID-19 outbreak, but it was not disastrous. There were no deaths as a result, and 792 inmates including Muhs have recovered. This persuades the court that FCI Pekin has acted appropriately to treat inmates who do contract COVID-19. Moreover, the Bureau of Prisons has implemented a COVID-19 vaccination plan and has begun administering vaccines to inmates and staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Feb. 5, 2021). As of February 11, 2021, 43,650 doses have been administered. *Id.* At FCI Pekin, 89 inmates and 91 staff have been fully vaccinated. *Id.*

It is understandable that Muhs is concerned about her health in the age

of COVID-19, and the court does not minimize those concerns. Nevertheless, the court concludes Muhs's medical conditions coupled with her history of COVID-19 and the present conditions at FCI Pekin do not clear the high bar necessary to warrant compassionate release for extraordinary and compelling reasons. Furthermore, the court has denied compassionate release under circumstances similar to hers. *See United States v. Brunston*, 4:18-CR-40145-KES, Docket 68 (D.S.D. May 26, 2020) (denying compassionate release after defendant had confirmed case of COVID-19) *United States v. Odie,* 4:17-CR-40016-01-KES, Docket 214 (D.S.D. Jan. 26, 2021) (denying reconsideration of compassionate release for defendant with confirmed case of mild COVID-19).

### B.    Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, comment. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Muhs's medical conditions and history of COVID-19, the court is not convinced that extraordinary and compelling reasons exists to release Muhs from custody early. In sum, Muhs has fallen far short of demonstrating extraordinary and compelling reasons for relief.

### III.    Sentencing Factors of § 3553(a)

Although the court need not consider the 3553(a) factors because Muhs's circumstances fail to meet the high bar of "extraordinary and compelling reasons" warranting a sentence reduction, such sentencing factors underscore

the point.

The sentencing factors in § 3553(a) do not weigh in favor of a reduction. Muhs's conviction stems from a conspiracy to distribute methamphetamine. At least 1.5 kilograms of methamphetamine were attributable to her conduct. Docket 233, ¶ 37. She was involved in obtaining and retrieving packages of methamphetamine that were sent through the United States mail. *Id.* ¶¶ 15, 21, 30. The packages of methamphetamine came from Arizona. *Id.* ¶¶ 17-18. Muhs along with others received methamphetamine to sell. *Id.* ¶¶ 18, 22.  It was estimated Muhs received between six and seven pounds of methamphetamine. *Id.* ¶¶ 22, 27, 32.  Muhs explained during her presentence interview that she got involved in selling drugs after seeing how much money could be made, and because the others involved "made selling drugs seem fun." *Id.* ¶ 35.

The total offense level was calculated as 29, and Muhs had eleven scorable history points resulting in criminal history Category V. *Id.* ¶¶ 46, 59. The advisory guideline range for her sentence was 140 to 175 months in custody. *Id.* ¶ 101. The court sentenced Muhs to the mandatory minimum sentence of 120 months in custody. Docket 244 at 2. Muhs has served approximately 15% of her statutory term. Docket 348 at 86. She is eligible for home detention on September 8, 2027. *Id.* at 85.

After careful consideration of her motion and the § 3553(a) factors, the court concludes Muhs's sentence of 120 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the offense to which she pleaded guilty.

## CONCLUSION

Muhs has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 338) is denied.

Dated February 12, 2021.

<div style="margin-left: 40%;">

BY THE COURT:

*/s/ Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

</div>